UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **WALTER RYAN, et al.,** } | |
| } | |
| **Plaintiffs,** } | |
| } | |
| v. } | Case No.: 2:12-cv-00670-MHH |
| } | |
| **EVENT OPERATIONS GROUP,** } | |
| **INC.,** } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OPINION

This opinion concerns three proposed FLSA settlements. In their complaint, plaintiffs Walter Ryan, Annie Myricks, and Roy Hall contend that defendant Event Operations Group, Inc. ("EOG") violated provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. The parties have agreed to settle the plaintiffs' FLSA claims, and they have asked the Court to review the terms of the proposed settlements. (Docs. 21-23, 27-29). For the reasons stated below, the Court approves the plaintiffs' settlements because they are a fair and reasonable compromise of a bona fide dispute.

**I.    BACKGROUND**

Plaintiffs Ryan, and Hall filed this lawsuit on February 27, 2012. (Doc. 1). In their complaint, they assert that EOG "provides event parking and security

services for events such as concerts, races, etc." (Doc. 1, p. 2). According to Ryan and Hall, EOG did not record their hours properly, and they "receive[d] nothing over their regular rate of pay for hours worked over 40 in a week." (*Id.*). Plaintiffs amended their complaint to add collective action allegations. (Doc. 11). Ms. Myricks opted-in to the lawsuit two weeks later. (Doc. 13).

EOG admits that the FLSA authorizes this action and that the Court has subject matter jurisdiction over the plaintiffs' claims. (Doc. 12, p. 4). EOG contends that it has a "policy that no Associate is allowed to work more than 40 hours in a workweek," and that it paid the plaintiffs consistent with "sign-in/sign-out sheets" that employees signed at the beginning and end of each shift. (*See* Doc. 21, pp. 2-3; Docs. 27-29, pp. 2-3). Nevertheless, EOG concedes that the plaintiffs occasionally worked more than 40 hours in a workweek, and EOG paid them "straight time instead of overtime compensation." (Docs. 21-23, p. 3; Docs. 27-29, p. 3). Based on affirmative defenses, EOG denies that the plaintiffs are entitled to relief under the FLSA. (Docs. 21-23, p. 3; Docs. 27-29, p.3).

EOG has made "whole relief" offers to the plaintiffs by crediting them with additional hours, calculating their overtime compensation for those hours, and matching the plaintiffs' recovery with awards of attorney fees and costs. (Docs. 12-13, p. 3; Docs. 27-29, pp. 3-4). The parties have represented to the Court that

2

they believe that the agreement reflects a fair and reasonable compromise of their dispute. (Docs. 21-23, p. 5; Docs. 27-29, p. 5).

In exchange for dismissal of the claims against it with prejudice, EOG has agreed to settle Mr. Ryan's FLSA claim for $7720.00. The $7720.00 consists of $3,860.00 in back wages and $ 3,860.00 in attorney fees. (Doc. 28, p. 4). EOG has agreed to settle Mr. Hall's FLSA claim for $7,350.00. (Doc. 27, p. 4) The $7,350.00 consists of $3,675.00 in back wages and $3,675.00 in attorney fees. (Doc. 27, p. 4). EOG has agreed to settle Ms. Myricks's FLSA claim for $145.00, inclusive of attorney's fees and costs. (Doc. 29, p. 4).

On this record, the Court considers the parties' motion to approve the proposed settlement of the plaintiffs' FLSA claims.

## II. DISCUSSION

"Congress enacted the FLSA in 1938 with the goal of 'protect[ing] all covered workers from substandard wages and oppressive working hours.' Among other requirements, the FLSA obligates employers to compensate employees for hours in excess of 40 per week at a rate of 1 ½ times the employees' regular wages." *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2162 (2012) (quoting *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 739 (1981)); *see also* 29 U.S.C. §§ 202, 207(a). Congress designed the FLSA "to

ensure that *each* employee covered by the Act would receive '[a] fair day's pay for a fair day's work' and would be protected from 'the evil of 'overwork' as well as 'underpay.''" *Barrentine*, 450 U.S. at 739 (emphasis in original).  In doing so, Congress sought to protect, "the public's independent interest in assuring that employees' wages are fair and thus do not endanger 'the national health and well-being.'" *Stalnaker v. Novar Corp.*, 293 F. Supp. 2d 1260, 1264 (M.D. Ala. 2003) (quoting *Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 706 (1945)).

If an employee proves that his employer violated the FLSA, the employer must remit to the employee all unpaid wages or compensation, liquidated damages in an amount equal to the unpaid wages, a reasonable attorney's fee, and costs.  29 U.S.C. § 216(b).  "FLSA provisions are mandatory; the 'provisions are not subject to negotiation or bargaining between employer and employee.'" *Silva v. Miller*, 307 Fed. Appx. 349, 351 (11th Cir. 2009) (quoting *Lynn's Food Stores, Inc. v. U.S. ex. Rel. U.S. Dep't of Labor*, 679 F.2d 1350, 1352 (11th Cir. 1982)); *see also Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 707 (1945).  "Any amount due that is not in dispute must be paid unequivocally; employers may not extract valuable concessions in return for payment that is indisputedly owed under the FLSA." *Hogan v. Allstate Beverage Co., Inc.*, 821 F. Supp. 2d 1274, 1282 (M.D. Ala. 2011).

4

Consequently, parties may settle an FLSA claim for unpaid wages only if there is a bona fide dispute relating to a material issue concerning the claim. To compromise a claim for unpaid wages, the parties must "present to the district court a proposed settlement, [and] the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Lynn's Food*, 679 F.2d at 1353*; see also Hogan*, 821 F. Supp. 2d at 1281-82.[1]  "[T]he parties requesting review of an FLSA compromise must provide enough information for the court to examine the bona fides of the dispute." *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010). The information that the parties provide also should enable the Court "to ensure that employees have received all uncontested wages due and that they have received a fair deal regarding any additional amount that remains in controversy." *Hogan*, 821 F. Supp. 2d at 1282. "If a settlement in an

---

[1] In *Lynn's Food*, the Eleventh Circuit Court of Appeals explained, "[t]here are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees. First, under section 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them. An employee who accepts such a payment supervised by the Secretary thereby waives his right to bring suit for both the unpaid wages and for liquidated damages, provided the employer pays in full the back wages. The only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations. When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." 679 F.2d at 1352-53 (footnotes omitted). The Eleventh Circuit recently reiterated the import of *Lynn's Food*. *See Nall v. Mal–Motels, Inc.*, 723 F.3d 1304 (11th Cir. 2013).

employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute," then a court may approve a settlement.  *Lynn's Food*, 679 F.2d at 1354; *see also Silva*, 307 Fed. Appx. at 351 (proposed settlement must be fair and reasonable).

Based on the Court's review of the proposed settlement agreement and the information that the parties submitted regarding the terms of the proffered settlement, the Court finds that there is a bona fide dispute in this matter that supports the proposed settlement.  The settlement proceeds represent a fair and reasonable compromise based on the existing evidence regarding unpaid wages.  EOC has admitted that, on occasion, the plaintiffs worked more than 40 hours in a workweek and that EOC mistakenly paid them straight time instead of overtime.  If they accepted this fact and plaintiffs' testimony, reasonable jurors could award actual damages.  The plaintiffs have acknowledged that there is no guarantee of an award of liquidated damages.  The plaintiffs also are aware that if the action proceeded, EOC would argue that they are not entitled to recover overtime compensation, liquidated damages, or attorneys' fees under the doctrines of waiver and estoppel.  EOC acknowledges that cost of continued defense exceeds any

potential liability.  Consequently, the settlement is fair and reasonable under the circumstances of this case.[2]

## III. CONCLUSION

For the reasons stated, the Court approves the parties' proposed settlement of the plaintiffs' claims.  The Court concludes that there is a bona fide dispute and that the terms that the parties have negotiated constitute a fair and reasonable resolution of that dispute.  The Court will enter a separate order dismissing the plaintiffs' FLSA claims with prejudice.

---

[2] The Court approves the final draft of the settlement agreements that the parties submitted to the Court.  (*See* Docs. 27-29, pp. 6-8).  The Court was not willing to approve the parties' original agreements because they contained provisions that generally are not appropriate in FLSA settlement agreements.  For example, the settlement agreements initially contained confidentiality provisions and general release provisions.  "[C]onfidentiality clauses and pervasive release provisions generally render a FLSA settlement agreement unfair and unreasonable."  *Vinson v. Critter Control, Inc.*, 2012 WL 6737508, at *2 (S.D. Ala. Dec. 28, 2012); *Hogan*, 821 F. Supp. 2d at 1282 (same).  Confidentiality provisions in FLSA settlements are particularly problematic because they "have the potential to hinder unfairly the congressional goal of universal compliance with the FLSA," thereby affecting both the private and public interests that the FLSA protects.  *Id.*; *see also Stalnaker*, 293 F. Supp. 2d at 1264 ("Absent some compelling reason, the sealing from public scrutiny of FLSA agreements between employees and employers would thwart the public's independent interest in assuring that employees' wages are fair and thus do not endanger 'the national health and well-being.'") (quoting *Brooklyn Savings Bank*, 324 U.S. at 706); *Dees*, 706 F. Supp. 2d at 1242 ("a confidentiality provision furthers resolution of no bona fide dispute between the parties; rather, compelled silence unreasonably frustrates implementation of the 'private-public' rights granted by the FLSA and thwarts Congress's intent to ensure widespread compliance with the statute.").  The Court recognizes that there may be instances in which confidentiality provisions and other pervasive release provisions may be appropriate, but those instances are rare, and the parties must provide compelling reasons for the Court to approve an agreement containing such provisions.  *Stalnaker*, 293 F. Supp. 2d at 1264; *Crabtree v. Volkert, Inc.,* 2012 WL 6093802 (S.D. Ala. Dec. 7, 2012).

**DONE** and **ORDERED** this 31st day of January, 2014.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE